## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF
## VIRGINIA
### Norfolk Division

PAMELA SMITH,

    Plaintiff,

  v.

SCHOOL BOARD FOR THE CITY OF
NORFOLK, VIRGINIA;

    Serve at:

    Karen Tanner
    School Board Clerk
    800 E. City Hall Ave # 800,
    Norfolk, VA 23510

SHARON BIRDSONG;

    Serve at:

    800 E. City Hall Ave # 800,
    Norfolk, VA 23510
    *Place of employment*

DANDRIDGE T. BILLUPS;

    Serve at:

    800 E. City Hall Ave # 800,
    Norfolk, VA 23510
    *Place of employment*

DR. DANIELLE BELTON;

    Serve at:

    200 Shirley Ave,
    Norfolk, VA 23517
    *Place of employment*

Civil Action No: 2:21-cv-00138

**COMPLAINT**: Family and Medical Leave Act -Interference, Retaliation; 42 U.S.C. §1983 Violation of Civil Rights; Defamation *Per Se;* Breach of Contract; Wrongful Termination in Violation of Public Policy

EDNA FELTON;

     Serve at:

     800 E. City Hall Ave # 800,
     Norfolk, VA 23510
     *Place of employment*

and

JOHNAY BROWN;

     Serve at:

     200 Shirley Ave,
     Norfolk, VA 23517
     *Place of employment*

    Defendants.                          **Jury Trial Demanded**

## **COMPLAINT**

Comes now the Plaintiff, PAMELA SMITH ("Ms. Smith"), by counsel, and in support of her Complaint against Defendants, SCHOOL BOARD OF THE CITY OF NORFOLK, VIRGINIA ("NPS"), SHARON BIRDSONG, ("Ms. Birdsong"), DANDRIDGE BILLUPS ("Mr. Billups"), DR. DANIELLE BELTON ("Dr. Belton"), EDNA FELTON ("Ms. Felton"), and JOHNAY BROWN ("Ms. Brown"), and states the following:

## **NATURE OF THE ACTION**

1.    This violation of 42 U.S.C. §1983, interference with Family and Medical Leave Act ("FMLA"), retaliation for exercise of Family and Medical Leave Act rights, defamation *per se*, wrongful termination, and breach of contract action arises from the wrongful conduct of Norfolk Public Schools and its employees between January 2020 and September 2020 that have resulted in Ms. Smith's termination, humiliation, and loss which have had immediate and future financial impact upon Ms. Smith.

## **PARTIES**

2.   Pamela Smith is a former employee of Norfolk Public Schools, Ghent Elementary School. Ms. Smith is a resident of the City of Norfolk, Virginia and at all times relevant to this complaint was employed by the NPS. Ms. Smith was a classified employee who was retaliated against, defamed, and was subjected to interference with her federal rights without due process.

3.   School Board for the City of Norfolk is a state created corporate body, capable of suing and being sued, that operates the Norfolk Public Schools for the city of Norfolk, Virginia. NPS, at all times relevant to this complaint, employed Ms. Smith at Ghent Elementary School as a classified employee. NPS interfered with Ms. Smith's FMLA rights, retaliated against Ms. Smith for taking FMLA leave, breached the contract of employment between Ms. Smith and NPS, and violated 42 U.S.C. §1983 by terminating Ms. Smith without due process and/or wrongfully terminating her in contravention of public policy.

4.   Ms. Sharon Birdsong is an employee of NPS and the Superintendent of NPS for all times relevant to this complaint. Sharon Birdsong, as an agent and officer of the City of Norfolk Public Schools, wrongfully terminated Ms. Smith in contravention of public policy.

5.   Mr. Dandridge Billups is an employee of NPS and the head of human resources for NPS. At all times relevant to this complaint, Mr. Billups was an employee of NPS. Mr. Billups defamed Ms. Smith and retaliated against her for taking FMLA leave.

6.   Dr. Danielle Belton is an employee of NPS and the Principal of Ghent Elementary School and was Ms. Smith's direct supervisor for all times relevant to this complaint. Dr. Belton

defamed Ms. Smith, interfered with her FMLA rights, retaliated against her for taking FMLA leave, and is believed to have defamed her.

7. Ms. Edna Felton is an employee of NPS and the Auditor at Norfolk Public Schools Ms. Edna Felton interfered with Ms. Smith's FMLA leave.

8. Ms. Johnay Brown is an employee of NPS and works in the Human Resources Department, she was a coworker and indirect superior of Ms. Smith for all times relevant to this complaint. Ms. Brown interfered with Ms. Smith's FMLA rights.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1331, the Eastern District of Virginia has proper subject matter jurisdiction over this matter as it is a question of federal law.

10. Specifically, this matter concerns the violation and interpretation of United States Code 42 U.S.C. § 1983e and 29 U.S.C. §2601 *et seq.*

11. The Eastern District of Virginia, Norfolk Division is the proper venue for this action pursuant to 28 U.S.C. § 1391(c)(2) and 28 U.S.C. § 1391(b)(1),(2) as it is the District and Division in which Defendant, NPS, is established and has a primary place of business; and is the location at which the damaging practices were perpetrated, where the Plaintiff was employed by Defendant, and is convenient to the parties and witnesses.

## FACTS

12. Ms. Pamela Smith was employed by Defendant, NPS, at Ghent Elementary School from October 2000 until September 16, 2020.

13. Ms. Smith was employed as a classified employee at Ghent Elementary School as an administrator and office worker in the principal's office.

14.    Ms. Smith, through her position, as part of her position, took and stored funds from teachers and programs, disbursed funds from the school safe at the direction of Dr. Belton, and performed other administrative and bookkeeping functions.

15.    Ms. Smith performed admirably at her position for twenty years.

16.    Ms. Smith was employed by NPS pursuant to a contract defined by Norfolk Public School policy for classified employees. (See **Exhibit A** - Norfolk School Board Policy defining classified employees).

17.    Ms. Smith, at all times prior to going on FMLA leave in January 2020, conducted her employment pursuant to the policies established by Dr. Belton, her superior, including during any handling of NPS funds.

18.    Ms. Smith, at all times prior to going on FMLA leave, acted at the direction of and under the supervision of Dr. Belton, including during any handling of NPS funds.

19.    Ms. Smith was performing all of her duties at or above the standard expected of her at Ghent as set out by Dr. Belton, the principal of Ghent Elementary.

20.    Pursuant to this contract, Ms. Smith was entitled to certain procedures regarding potential termination from employment at NPS.

21.    Amongst these provisions was the right to a review hearing before a deputy of the superintendent. (See **Exhibit A).**

22.    NPS and classified employees thereof are bound by the provisions of these regulations which govern the employment relationship between classified employees and NPS.

23.    Included in the contract between Ms. Smith and NPS is that her termination would have to be finalized and approved only by the Norfolk School Board and Superintendent.

24.    At all times prior to the wrongful actions of the Defendants, Ms. Smith had ongoing
       expectations that her employment would continue.

25.    Ms. Smith's contract with NPS would have continued for years had it not been for the
       wrongful conduct of Defendants.

26.    In October 2019, Ms. Smith's assistant (a Student Data Specialist) left, thus Ms. Smith
       took on the duties of the Student Data Specialist in addition to her own, until the Student
       Data Specialist position was filled.

27.    Ms. Smith was then forced to do the job of two individuals, her own position and that of
       the Student Data Specialist, at the direction of Dr. Belton.

28.    Dr. Belton formed and enforced the policies by which Ms. Smith was to keep track of the
       school safe, document of incoming cash, generate receipts, disburse funds from the School
       safe, and document safe funds at Ghent School.

29.    Dr. Belton was Ms. Smith's direct supervisor.

30.    Ms. Smith, throughout her time at Ghent, performed her duties at the discretion of and by
       the direction of the Principal.

31.    Ms. Smith only performed her duties in compliance with the example and direction
       provided by Dr. Belton.

32.    Per Norfolk School Board policy, DM, cash in the school safe is the responsibility of the
       principal, in this case, Dr. Belton. (See **Exhibit B –** Norfolk School Board Policy DM).

33.    The relevant portion of this provision provides "The principal shall be responsible to
       insure that no money, unless placed in a suitable vault or safe, is left in the building
       overnight."

34. It is the responsibility of the Principal, Dr. Belton, to protect and insure the full accounting of all funds at Ghent Elementary School.

35. Dr. Belton and Ms. Brown both had access to the school safe.

36. Dr. Belton regularly directed Ms. Smith to retrieve funds from the school safe and disburse them to teachers and/or administrative staff upon their respective requests, for various expenditures.

37. Dr. Belton had, at least once, instructed Ms. Smith to use funds from the school safe to purchase food supplies for the teachers and staff without accounting for such funds.

38. Dr. Belton had, at least once, instructed Ms. Smith to provide to Dr. Belton cash from the school safe, in this instance Dr. Belton provided Ms. Smith receipts but no information relating to the use of such funds.

39. Despite her obligation to do so, Dr. Belton did not properly manage and insure the funds in the school, which she tasked Ms. Smith with handling.

40. Dr. Belton, knowing her liability, concocted a scheme to defame and terminate Ms. Smith.

41. In December 2019, Ms. Smith informed Dr. Belton that she would need to go on FMLA leave in January and February 2020.

42. NPS abide by and are bound by the provisions of FMLA rights as provided for in federal code and Norfolk School Board Policy. (See **Exhibit C** – Norfolk School Board Policy regarding FMLA).

43. Ms. Smith completed the necessary paperwork and was certified for FMLA leave in December 2019. (See **Exhibit D –** FMLA Certification Paperwork).

44. From January 3, 2020 – January 12, 2020 (prior to her scheduled and approved FMLA leave,) Ms. Smith was attempting to finish work that had come in over the Christmas break, which was a yearly occurrence at Ghent Elementary School.

45. Ms. Smith at no point missed a deadline or failed to perform her duties as required and prescribed by Dr. Belton and/or NPS policy.

46. Ms. Smith described to Dr. Belton what work was remaining to be done prior to her FMLA leave starting.

47. Ms. Smith indicated to Dr. Belton she wanted to have this work completed prior to beginning her FMLA leave.

48. Dr. Belton told Ms. Smith to "not worry" about any of Ms. Smith's remaining tasks that until Ms. Smith had returned from FMLA leave on March 9, 2020.

49. Ms. Smith went out on certified FMLA leave on January 15, 2020.

50. Dr. Belton used Ms. Smith's FMLA leave as an opportunity to pin Ms. Smith as a scapegoat for alleged financial inconsistencies that were caused by Dr. Belton's policies at Ghent.

51. Dr. Belton intentionally instructed Ms. Smith to leave work uncompleted so that she would later be accused of violation of school board policy.

52. While Ms. Smith was on FMLA leave she was contacted on February 24, 2020 by Ms. Brown and Ms. Felton for Ghent about financial records.

53. While Ms. Smith was on FMLA leave she was contacted again on March 4, 2020 by Ms. Brown regarding further records.

54. Ms. Smith questioned NPS regarding why she was being contacted while on FMLA leave.

55. Ms. Smith was informed that Ms. Brown, Dr. Belton, and Ms. Felton on behalf of NPS were conducting an audit of Ghent's financials in January-March 2020.

56. Ms. Brown, Dr. Belton, and Ms. Felton required Ms. Smith to participate in the audit beyond de minimis contributions.

57. Ms. Smith was forced by Dr. Belton, Ms. Felton, and Ms. Brown, acting on behalf of NPS, to perform functions of her position and some functions outside the scope of her position while she was on FMLA leave.

58. In the alternative, Ms. Smith was forced by her Dr. Belton, Ms. Felton, and Ms. Brown, acting outside the scope of their employment, to perform functions of her position and some functions outside the scope of her position while she was on FMLA leave.

59. Ms. Smith was not given the choice to refuse Ms. Brown when contacted.

60. An audit was commenced to discover and out the practices at Ghent school relating to the school finances.

61. The practices targeted by the audit were endorsed, encouraged, and instructed by Dr. Belton.

62. The records under investigation in this audit had previously been audited in July 2019 and no issues with Ms. Smith's performance or handling of funds had been found.

63. Ms. Brown, along with Dr. Belton, used this audit in order to pin Ms. Smith as a scapegoat for any financial discrepancies and to have her eventually terminated.

64. Ms. Brown and Dr. Belton conducted this plan to blame and eliminate Ms. Smith to cover for the policies, enacted by Dr. Belton and supported by Ms. Brown and Ms. Felton, which led to mishandling of Ghent funds.

65.  Ms. Brown forced Ms. Smith perform work pursuant to the audit that would have her terminated while she was on FMLA leave.

66.  Ms. Felton forced Ms. Smith participate in the audit that would have her terminated while she was on FMLA leave.

67.  NPS through its agents, instigated an investigation into Ms. Smith on account of her taking of valid FMLA leave.

68.  Despite this audit and investigation Ms. Smith was never interviewed about the alleged practices and policies under audit and investigation, instead she was merely asked to supply information to Dr. Belton, Ms. Felton, Ms. Brown and NPS, all while on FMLA leave.

69.  The investigation and audit were adverse employment actions that ultimately deprived Ms. Smith of her position at NPS.

70.  Ms. Brown, Dr. Belton, Ms. Felton, and NPS interfered with Ms. Smith's FMLA leave by requiring her to participate in the audit of Ghent while on FMLA leave.

71.  Dr. Belton, and NPS retaliated against Ms. Smith for taking FMLA leave by establishing an adverse employment action through an investigation against her and concocting false charges of embezzlement that led to her termination.

72.  Following this audit, an investigation started into Ms. Smith's conduct while at Ghent Elementary School (See **Exhibit E** – Letter indicating ongoing investigation).

73.  Despite Ms. Smith not being the exclusive party with access to school funds, no other individuals were investigated directly.

74.  It is believed that, during the investigation into Ms. Smith, Dr. Belton, Ms. Felton, and Ms. Brown accused Ms. Smith of embezzling and misappropriating funds.

75. Dr. Belton defamed Ms. Smith to her colleagues at Ghent Elementary School accusing her of defamation, including Ms. McMorris.

76. In the weeks following the investigation's initiation, Dr. Belton forced teachers and staff at Ghent Elementary School to fill out forms asserting that Ms. Smith had embezzled funds.

77. At least one former teacher, Ms. Ringstaff, of Ghent Elementary School, refused to fill out this form because she was being forced against her will to sign off on the form.

78. Dr. Belton forced teachers and staff to sign off of these forms only after having defamed Ms. Smith to these employees by accusing her of embezzlement.

79. Dr. Belton was instructing teachers and staff, after the fact, to conclude that Ms. Smith was embezzling, despite each teacher or staff's personal knowledge of the facts.

80. Dr. Belton was propagating these malicious forms in order to back up her defamation and further pin Ms. Smith as a scapegoat.

81. Dr. Belton forced these forms upon her subordinates in furtherance of her scheme against Ms. Smith.

82. Despite never speaking to Ms. Smith directly about the allegations therein, Mr. Billups and Dr. Belton detailed the findings of the investigation in such a way to make Ms. Smith into a scapegoat for the practices at Ghent Elementary School with the intention of having her terminated. (See **Exhibit F** - Defamatory Letter from Dandridge Billups).

83. Ms. Smith categorically denies embezzling or mishandling funds as alleged by Mr. Billups.

84. Ms. Smith neither embezzled any funds. nor mishandled funds at Ghent Elementary School.

85.  Ms. Smith has been shown no evidence of her alleged embezzlement or mishandling of funds for NPS.

86.  These defamatory statements ultimately cost Ms. Smith her employment by jumpstarting the termination process.

87.  Mr. Billups never interviewed or spoke to Ms. Smith regarding these allegations to determine her side of the story, or the veracity of the statements on which he based his publication.

88.  Mr. Billups acted with reckless disregard for the truth by publishing these allegations without speaking to Ms. Smith.

89.  Mr. Billups knew or should have known that Ms. Smith did not embezzle any funds from Ghent Elementary School.

90.  Despite this knowledge Mr. Billups accused Ms. Smith of a crime for which she could be indicted and punished.

91.  Mr. Billups knowingly published falsities about Ms. Smith in a letter from June 29, 2020, stating: "Specifically, a preponderance of information supports that you perpetrated embezzlement of the school funds which resulted in a loss of approximately $1,567.00." (See **Exhibit F**). This letter was included in Ms. Smith's record, including being unnecessarily published to the Super Intendent and School Board.

92.  Mr. Billups accused Ms. Smith of embezzlement and mishandling of school funds in the above referenced letter.

93.  Mr. Billups acted with malice in publishing the defamatory statements.

94.  Mr. Billups acted to advance Dr. Belton's self-serving schemes by publishing the defamatory statements that led to Ms. Smith's termination.

95.   Mr. Billups aided Dr. Belton in her scheme against Ms. Smith and knew or should have known that the published defamatory statements were false.

96.   Ms. Smith was directed, through this defamatory letter, that a review hearing would be held on August 10, 2020 to determine if she should ultimately be fired.

97.   Norfolk School Board Policy and Virginia Code §22.1-308 provide that Ms. Smith should be given the opportunity to speak in defense of her employment at a review hearing with counsel.[1]

98.   Without being presented with any evidence, Ms. Smith's only opportunity to respond was in a letter to Mr. Billups written by counsel.

99.   The review was to be held on August 10, 2020 and was conducted under the auspices of NPS policy, although Ms. Smith is not aware that this review every took place.

100.  This review hearing would determine whether Ms. Smith would be terminated.

101.  Additionally, the findings of this hearing could be forwarded to the criminal investigatory bodies; thus the review could be an event during which an individual could self-incriminate.

102.  Ms. Smith requested that she be allowed to have her counsel participate in the review hearing.

103.  Virginia Code §22.1-308(4) provides that Ms. Smith should have been entitled to counsel at her review hearing.[2]

---

[1] See **Exhibit A** - "Permanent employees may be discharged by the superintendent for any behavior, conduct,or cause described in these rules, provided, however, that prior to such action, the employee sought to bedischarged shall be entitled to a review of the reasons for such action."

[2] "The Board of Education shall prescribe a grievance procedure which shall include the following: (4) The right of the grievant and the respondent to present appropriate witnesses and be represented by legal counsel and another representative."

104. Nonetheless, Mr. Billups on behalf of NPS denied Ms. Smith representation of counsel at her review hearing. (See **Exhibit G** - Letter from Mr. Billups denying Ms. Smith representation of counsel.)

105. Despite the potential criminal ramifications, Ms. Smith was denied opportunity to be represented by counsel at this review, in violation of her Fifth and Sixth Amendment rights.

106. This review was her only opportunity to participate in the process of her termination and present evidence and arguments on her own behalf, despite the fact that Ms. Smith was never presented with evidence that she had done anything wrong.

107. Ms. Smith did not attend the review because she was, illegally, not permitted to have counsel participate and there were criminal ramifications of the review.

108. Ms. Smith is unaware of whether a review ever actually happened.

109. Mr. Billups, on behalf of NPS, determined that Ms. Smith should be terminated.

110. The result of this review hearing was forwarded to the superintendent for final action.

111. NPS denied Ms. Smith the opportunity to participate in the process of her removal.

112. Ms. Birdsong, the Superintendent of Norfolk Public Schools, informed Ms. Smith that her termination would be decided at a School Board meeting on September 16, 2020.

113. The School Board meeting was the final opportunity for Ms. Smith to participate in the process of her removal as provided by the Norfolk Public School policy.

114. Ms. Birdsong informed Ms. Smith of this School Board Meeting on September 15, 2020 at 6:00 p.m. (See **Exhibit H** – Notice of Recommendation of Termination to School Board).

115.  Ms. Birdsong gave this notice to Ms. Smith less than twenty-four (24) hours before the meeting to decide her termination was to take place.

116.  Ms. Birdsong gave Ms. Smith this notice only after the deadline for public comment had passed for that meeting.

117.  Ms. Birdsong gave this notice with insufficient time for either Ms. Smith or counsel to prepare for this meeting to defend Ms. Smith's reputation and position.

118.  Ms. Birdsong and the Norfolk School Board have regularly held meetings without sufficient notice to the public in violation of their obligations under Virginia Code § 2.2-3707 (See **Exhibit I** – Virginia Pilot Article)

119.  Despite her lack of valid notice, Ms. Smith prepared and submitted a public comment contesting her termination.

120.  This comment was not read into the meeting on September 16, 2020.

121.  Ms. Smith was informed that the comment would be read on September 23, 2020, a full seven (7) days after her termination had been finalized, at which point Ms. Smith retracted her comment as it would be entirely worthless post-termination.

122.  It is presumed that Ms. Billups defamatory publication was read to the School Board at the September 16, 2020 meeting by Ms. Sharon Birdsong.

123.  Ms. Smith was ultimately terminated by the superintendent and school board after the September 16, 2020 meeting.

124.  Ms. Smith never received a formal notice of termination.

125.  Ms. Smith only became finally aware of the School Board decision from September 16, 2020 because her position appeared on the open position website for Ghent Elementary School and she no longer received pay.

126.   Ms. Birdsong and NPS denied Ms. Smith the opportunity to defend herself at the School Board meeting at which she was terminated.

127.   Ms. Smith's termination was purportedly done in conjunction with published Norfolk School Board policies, specifically GDPD-R. (See **Exhibit A**)[3]

128.   Norfolk School Board propagated, policy GDPD-R to govern discharge of classified employees under the authority of Virginia Code §22.1-308.

129.   Virginia Code §22.1-308(4) permits Norfolk School Board to discharge employees pursuant to set procedures propagated by the School Board, so long as "the grievant and the respondent [have the right] to present appropriate witnesses and be represented by legal counsel and another representative."[4]

130.   Ms. Smith was never presented the opportunity to present witnesses, nor to be represented by legal counsel at any hearing or other in-person review.

131.   NPS propagated GDPD-R for classified employees pursuant to this authority from the Virginia Code.[5]

132.   Norfolk School Board policies function as a contract between employees and NPS.

133.   These policies are provided publicly and alter the conditions and terms of employment for both employees and NPS when followed correctly.

134.   Norfolk School board policy GDPD-R is insufficient to protect the rights and property of Ms. Smith and other non-teacher employees at NPS.

---

[3] Ms. Smith's termination was done either pursuant to Norfolk School Board policies, and those policies are insufficient to protect her rights as outlined in Count IV; or NPS failed to follow its own policies and the laws of the Commonwealth in her termination pursuant to Counts V and VI.

[4] *Id.*

[5] *Id.*

135.   Agents of NPS, including Defendants Mr. Billups and Ms. Birdsong, did not follow the procedures as outlined by NPS and the Virginia Code.

136.   All employees of NPS are bound by the policies proscribed by the Norfolk School Board.

137.   NPS through its agents, officers, and employees, failed to abide by the terms of this employment contract by not permitting Ms. Smith counsel at her review hearing and not giving her sufficient notice to defend herself at the Norfolk School Board meeting.

138.   NPS through its procedures, ended Ms. Smith's employment, her income, and her right to benefits without allowing her the due process of participation in those procedures.

139.   Both NPS policy and the execution thereof by its agents and employees violated Ms. Smith's right to due process.

140.   NPS by its agents and the Superintendent, ended Ms. Smith's employment without allowing her to participate in her due process.

141.   NPS deliberately and systematically denied Ms. Smith her right to due process to protect her position as prescribed by their own policies.

142.   The process by which Ms. Smith lost her livelihood through false accusations and threats of criminal prosecution was insufficient to fulfill the protections granted to citizens by the U.S. Constitution and Constitution of the Commonwealth of Virginia.[6]

143.   NPS violated Ms. Smith's due process protections by refusing to permit her counsel, or present witnesses, and creating a process that does not permit Ms. Smith to participate and protect her rights and property.

144.   NPS violated Ms. Smith's rights by refusing her counsel in a hearing at which she could incriminate herself related to a potential a criminal proceeding.

---

[6] U.S. Const. Amend. 5, 6; Virginia Const. Art. I §11

145.    Ms. Smith lost her employment with NPS on September 16, 2020.

146.    Ms. Smith was financially harmed by the actions described above having lost her income, her expectation for future income, her reputation, and her career.

147.    Despite her best efforts, Ms. Smith has not been able to find subsequent employment after having been terminated.

### COUNT I: INTERFERENCE WITH FAMILY AND MEDICAL LEAVE

148.    Plaintiff reasserts and realleges the claims made in paragraphs 1-147.

149.    Defendant NPS interfered with Plaintiff's valid FMLA leave through its agents and employees when they required Plaintiff to participate in an audit during her valid FMLA leave.

150.    In the alternative, Defendants Dr. Belton, Ms. Felton, and Ms. Brown, acting outside the scope of their employment, interfered with Plaintiff's valid FMLA leave forcing her to conduct work pursuant to an audit while on FMLA leave.

151.    Plaintiff began valid FMLA leave on January 15, 2020.

152.    Plaintiff was on valid leave when contacted by Ms. Brown on February 24, 2020, March 4, 2020, and March 9, 2020.

153.    Ms. Brown had Plaintiff participate in an audit whose purpose was to have Ms. Smith terminated while she was on FMLA leave.

154.    Plaintiff was instructed by NPS that she was to do "no" work for Ghent Elementary School while on FMLA leave.

155.    Despite this warning, Plaintiff was forced by Dr. Belton, Ms. Felton, and Ms. Brown to engage in work pursuant to an audit while Plaintiff was on FMLA leave.

156. Ms. Brown and Ms. Felton contacted Ms. Smith on their own accord and at the direction of Dr. Belton.

157. Dr. Belton, acting as Ms. Smith's supervisor on NPS' behalf, forced Ms. Smith to conduct work pursuant to an audit that would ultimately result in the termination of her position.

158. Ms. Brown, Ms. Felton, and Dr. Belton by contacting Ms. Smith and requiring her to conduct work pursuant to an audit while on FMLA leave, interfered with Ms. Smith's federally protected rights.

159. NPS, through its agents, interfered with Plaintiff's FMLA rights by deliberately conducting an unnecessary and defamatory investigation into Plaintiff's employment while she was on FMLA leave and terminating her on account thereof.

160. In the alternative, Dr. Belton, Ms. Felton, and Ms. Brown, acting outside the scope of their employment, interfered with Plaintiff's FMLA rights by deliberately requiring Ms. Smith to conduct work pursuant to an audit while she was on FMLA leave.

## COUNT II: RETALIATION FOR TAKING FAMILY AND MEDICAL LEAVE ACT LEAVE

161. Plaintiff reasserts and realleges the claims made in paragraphs 1-160.

162. Defendant NPS retaliated against Plaintiff by retaliating against her for taking valid FMLA leave by directing its agents and employees to investigate and charge Plaintiff with false claims of embezzlement to have her terminated.

163. In the alternative, Defendant Dr. Belton, operating outside of the scope of her employment, retaliated against Plaintiff for taking valid FMLA leave by concocting a scheme to have Plaintiff terminated for false charges of embezzlement.

164. Plaintiff began valid FMLA leave on January 15, 2020.

165. Plaintiff had, at all times prior to taking FMLA leave, acted in accordance with the established practices at Ghent Elementary School and pursuant to the instructions and directions of her superiors, including Dr. Belton.

166. Dr. Belton, initiated an investigation into Ms. Smith while she was on FMLA leave for the sole purpose of having her terminated and blamed for their mismanagement.

167. Dr. Belton, by arranging this adverse employment action violated Ms. Smith's FMLA rights.

168. Dr. Belton initiated an investigation into Plaintiff to have her terminated on March 9, 2020, immediately following Plaintiff's FMLA leave.

169. Mr. Billups retaliated against Plaintiff for taking FMLA leave by charging her wrongfully with embezzlement in order to have her terminated for taking FMLA leave.

170. Plaintiff was terminated as a result of this investigation.

171. Dr. Belton was acting on behalf of NPS when she initiated the investigation into Plaintiff on account of her FMLA leave.

172. In the alternative, Dr. Belton was acting outside of the scope of her employment, with malice, for the purpose of retaliating against Plaintiff for taking FMLA leave by deliberately conducting an unnecessary and defamatory investigation into Plaintiff's employment while she was on FMLA leave and concocting a scheme to have her terminated.

173. Plaintiff was ultimately terminated on account of taking her FMLA leave.

## COUNT III: DEFAMATION *PER SE*

174. Plaintiff reasserts and realleges the claims made in paragraphs 1-173.

175. Defendant, Mr. Billups, defamed the Plaintiff by accusing her of embezzlement.

176. It is believed that Dr. Belton, Ms. Felton, and Ms. Brown informed auditors, coworkers, and Mr. Billups between March 10, 2020 and June 29, 2020 that the Plaintiff had embezzled money from Ghent.

177. Dr. Belton accused Plaintiff of embezzlement to teachers and staff at Ghent Elementary School including Ms. Ringstaff and Ms. McMorris.

178. Dr. Belton forced teachers and staff to fill out forms confirming the false allegations of Plaintiff's embezzlement.

179. Teachers and staff, including Ms. Ringstaff, refused to fill out Dr. Belton's form as it was being forced on them against their will.

180. Dr. Belton knew or should have known that her allegations against Plaintiff were false, as evidenced by his forced attempts to back up his defamation after the fact.

181. Dr. Belton was responsible for the safety and insuring the funds at Ghent Elementary School that came into or went out of the office. (See **Exhibit B**).

182. Dr. Belton defamed Plaintiff in order to blame her for Dr. Belton's policies and mismanagement at Ghent Public School.

183. Dr. Belton acted with malice and ill will in defaming Plaintiff and in order to cover up for her own shirked responsibilities.

184. Ms. McMorris, Ms. Ringstaff, and the other teachers and staff at Ghent Elementary School had no need to know of the false allegations of defamation Dr. Belton published to them.

185. Dr. Belton's malice and ill will toward Plaintiff is further demonstrated by her forcing teachers and staff to confirm after the fact that what Dr. Belton had accused Plaintiff of doing to further scapegoat Plaintiff.

186.  Mr. Billups published defamatory statements about Plaintiff to her personnel file and to Mr. Hazelette and Ms. Birdsong, along with the School Board.

187.  Mr. Billups, accused Ms. Smith of embezzlement: "Specifically, a preponderance of information supports that you perpetrated embezzlement of the school funds which resulted in a loss of approximately $1,567.00."

188.  Mr. Billups copied this defamatory statement into the permanent personnel record of the Plaintiff for view by any NPS employee and is believed to have sent it to Mr. John. Hazelette and Ms. Sharon Birdsong, along with the School Board.

189.  Mr. Billups recklessly published this defamatory statement to the Norfolk School Board at the meeting on September 16, 2020.

190.  Mr. Billups, at the time he published the defamatory statements, was aware that the accusations were false or acted in wanton and reckless disregard for the veracity of the statements.

191.  Mr. Billups did not verify whether the accusations made against the Plaintiff were true or false, in fact no evidence has been submitted at all which ties Mrs. Smith to any missing funds.

192.  Embezzlement is a crime involving moral turpitude, for which, if convicted, Ms. Smith could be indicted and punished.

193.  Mr. Billups published this accusation of embezzlement without confirming the veracity of the claims.

194.  Mr. Billups did not know the parties, facts, or circumstances prior to publishing this allegation.

195.  Mr. Billups acted with wanton disregard for the truth when he published these statements.

196. Mr. Billups asserted that Ms. Smith was embezzling from Ghent Elementary Schools knowing the truth to be different, or with reckless disregard for the truth.

197. Given the complete lack of evidence, Ms. Smith's permanent personnel file had no need to include allegations of defamation, nor did Mr. Hazelette, Ms. Birdsong, nor the School Board need to be sent these accusations.

198. Mr. Billups alleged these statements maliciously, so that Ms. Smith could be scapegoated for Dr. Belton's mismanagement.

199. Mr. Billups acted with malice and ill will by intentionally and knowingly publishing falsities about Plaintiff in order to have her terminated.

200. Mr. Billups committed defamation per se against Plaintiff and caused her financial loss, emotional distress, humiliation, and loss of enjoyment.

201. These defamatory *per se* statements were stated with malice, with a knowledge of falsity, stated to individuals with no interest or duty in the subject, with stronger and more violent language than necessary, with a sinister and corrupt motive, with a desire to injure the Plaintiff.

202. Plaintiff reserves the right to amend this Count to include additional Defendants as discovery in this matter is conducted, it is believed that additional Defendants named herein defamed the Plaintiff.

203. As these comments constitute defamation *per se,* damages are presumed.

## **COUNT IV: VIOLATION OF 42 U.S.C. §1983**

204. Plaintiff reasserts and realleges the claims made in paragraphs 1-203.

205. Ms. Smith has a constitutional right to her property, including her employment, has a right to counsel, and a right not to not self-incriminate.

206.    NPS violated Ms. Smith's right to due process through their termination procedures.[7]

207.    The termination procedures enacted by Norfolk Public Schools were executed under the color of Virginia Code § 22.1-308.

208.    Plaintiff was not afforded the opportunity to have counsel represent her at a review hearing during which she could be accused of a crime, and during which her testimony could incriminate her, as NPS stated that it would give said testimony to Norfolk Commonwealth's Attorney's office.

209.    Norfolk Public Schools deprived Plaintiff of her right to counsel pursuant to the Sixth Amendment of the United States Constitution.

210.    Norfolk Public Schools did not give Plaintiff sufficient notice of the School Board hearing at which she would be terminated on September 16, 2020.

211.    Virginia law providing for the grievance procedure in connection with Plaintiff's termination from NPS is insufficient to protect her rights to due process under the 5th Amendment to the United States Constitution or Article I, Amendment 11 of the Virginia Constitution.

212.    Virginia law providing for this grievance procedure in connection with Plaintiff's termination from NPS is insufficient to protect her right to counsel under the 6th Amendment of the United States Constitution.

213.    NPS, acting under Virginia Code § 22.1-308, propagated grievance and removal procedures that ultimately did not permit Plaintiff the opportunity to defend herself prior to the taking of her employment and income.

---

[7] Public Schools not entitled to 11th Amendment Protection provided to the Commonwealth. *See e.g.,* Cole v. Buchanan County School Board, 661 F. Supp. 2d 569 (W.D. Va. 2009).

214. Norfolk Public Schools deprived Ms. Smith of her Constitutionally guaranteed right to her employment and due process by terminating her without due process.

215. Norfolk Public Schools has violated Plaintiff's 42 U.S.C. §1983 rights by terminating her and depriving her of her employment.

## COUNT V: WRONGFUL TERMINATION IN CONTRAVENTION OF PUBLIC POLICY

216. Plaintiff reasserts and realleges the claims made in paragraphs 1-215.

217. In the alternative of Count IV, the School Board for the City of Norfolk and Sharon Birdsong, wrongfully terminated the Plaintiff in contravention of Virginia Public Policy.

218. Virginia Code § 22.1-308 provides appropriate grievance and discharge procedures for employees of Public Schools, the School Board for the City of Norfolk violated this policy by refusing Plaintiff representation at her dismissal review hearing.

219. Specifically, Virginia Code §22.1-308(4) establishes that employees have the right to counsel at grievance and removal reviews.

220. Protecting Plaintiff's Constitutional rights, as Virginia Code §22.1-308 does, is clearly public policy in the Commonwealth of Virginia.

221. NPS terminated Plaintiff after a review hearing at which she was not given the opportunity to be represented by counsel or present witnesses. (See **Exhibit G**).

222. Statements made at this review could be forwarded to criminal investigatory bodies and result in self-incrimination.

223. NPS's subsequent termination of Plaintiff following this review hearing was in violation of Virginia Code §22.1-308(4).

224. NPS, by failing to fulfill its grievance procedure obligations under Virginia law, wrongfully terminated Plaintiff when she was discharged without a review at which she could be represented by counsel.

225. NPS through its agents wrongfully terminated Plaintiff in violation of public policy.

## COUNT VI: BREACH OF CONTRACT

226. Plaintiff reasserts and realleges the claims made in paragraphs 1-225.

227. City of Norfolk Public Schools breached their contract with Ms. Smith by refusing to permit her to participate in the review hearing with her attorneys.

228. Norfolk Public Schools publishes the standards and policies of employment for classified employees on their website.

229. NPS expects and requests that all employees abide by these procedures.

230. These procedures are validly published and enforceable under Virginia Statutory Authority.

231. These procedures constitute a contract between Norfolk Public Schools and its employees that modifies the at-will relationship between the parties.

232. Norfolk Public School failed to follow its procedures when it denied Ms. Smith effective representation at her review hearing.

233. Norfolk Public Schools violated the procedures for grievance as set forth by Virginia Code § 22.1-308(4)[8] by not permitting Plaintiff to be represented by counsel at the review hearing.

---

[8] "The Board of Education shall prescribe a grievance procedure which shall include the following: (4) The right of the grievant and the respondent to present appropriate witnesses and be represented by legal counsel and another representative."

234.  Without the ability to be represented by attorneys at her disciplinary hearing, Ms. Smith was not permitted to effectively defend herself.

235.  Norfolk Public Schools failed to follow its procedures by not giving Ms. Smith effective notice of her removal hearing before Norfolk School Board.

236.  Without sufficient notice of her termination meeting, Ms. Smith was not permitted to effectively defend herself.

237.  Norfolk Public School breached the contract between Ms. Smith and Norfolk Public Schools by failing to follow its own procedures.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff, PAMELA SMITH, prays that the court enter an award in Plaintiff's favor and against Defendants, as follows:

1.  Appropriate declaratory relief declaring the acts and practices of Defendants to have been in violation of Ms. Smith's rights as secured by 42 U.S.C. §1983 of the United States Code and the Family and Medical Leave Act;

2.  For appropriate actual damages against Defendants for violations of the FMLA for interference and retaliation, as well as for damages resulting from breach of contract, wrongful termination in contravention of public policy in amounts no less than:

    a.  $70,000 in back pay

    b.  $15,000 in back payment of lost benefits

    c.  $70,000 in front pay

3.  Find Defendants liable for Plaintiff's loss of business, damage to reputation, and loss of goodwill;

4. For punitive damages against Defendant under Count III of this Complaint for malicious defamation in an amount no less than $350,000;

5. For punitive damages against Defendants under Count IV of this Complaint for wrongful termination in violation of public policy in an amount no less than $350,000;

6. For presumed damages against Defendant under Count II of this Complaint for defamation *per se* in an amount no less than $500,000;

7. For compensatory damages resulting from the wrongful discharge of Plaintiff in violation of public policy in amounts no less than $800,000 for stress, emotional distress, inconvenience, loss of enjoyment, humiliation, and loss of reputation;

8. For all other wages and benefits lost or denied;

9. For an award to Plaintiff of her reasonable attorney's fees, and costs incurred in this action, together with expert witness fees and expenses;

10. For an award of any additional amounts necessary to offset the adverse tax consequences of an award received in a lump sum;

11. For an award of pre-judgement and post-judgement interest on any monetary award; and

12. For an Order of any other relief this Court deems to be just and proper.

A JURY TRIAL IS DEMANDED.

PAMELA SMITH

BY: _____

Brandon Bybee, Esq. (VSB No. 92140)
William Barteau, Esq. (VSB No. 93381)
**Brandon T. Bybee, P.L.C.**
208 E Plume St., Ste. 327
Norfolk, Virginia 23510
(757) 568-0090
(866) 568-0090 (Facsimile)
brandon@bybeelegal.com
william@bybeelegal.com
*Counsel for Plaintiff*